IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KELVIN NORWOOD (N-90286), | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 cv 00988 |
| | ) | |
| v. | ) | Judge Norgle. |
| | ) | Magistrate Judge Keys |
| DR. PARTHA GHOSH, DR. LIPING ZHANG, B. JOHNSON, MARCUS HARDY, UNKNOWN MEDICAL STAFF, and UNKNOWN CORRECTIONAL OFFICERS, | ) ) ) ) ) ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, Kelvin Norwood ("Norwood" or "Plaintiff"), by and through his attorneys, Bryan Cave LLP, brings this action against defendants, Dr. Partha Ghosh, Dr. Liping Zhang, B. Johnson, Marcus Hardy, and unknown medical staff and correctional officers at the Statesville Correctional Center ("Defendants"). Plaintiff complains of the Defendants as follows:

### Nature of the Action

1. This is an action brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983, *et seq*, and state law for deprivation of Plaintiff's rights guaranteed under the Eighth and Fourteenth Amendments of the United States Constitution. Specifically, Defendants (1) failed to properly and timely address the serious injury sustained by Mr. Norwood while incarcerated at the Statesville Correctional Center ("SCC") and under the medical care of Dr. Ghosh and the medical staff of SCC, and (2) Defendants have repeatedly and unjustifiably denied Mr. Norwood basic medical needs, including proper medical care and medications since the surgery for his injury. As a result, Mr. Norwood has endured months of excruciating pain and

his injuries were exacerbated by Defendants' failure to provide timely and competent medical care.

## Jurisdiction and Venue

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a) because the cause of action arises out of the Constitution and laws of the United States.

3. The Court may also exercise supplemental jurisdiction over Mr. Norwood's state law claim pursuant to 28 U.S.C. § 1367(a) because the claim(s) arise out of the same case or controversy as his federal claims.

4. Venue is proper under 28 U.S.C. § 1391(b) because at least one Defendant resides in this District and all of the events giving rise to the cause of action herein occurred within this District.

## Parties

5. Plaintiff is currently incarcerated in the Illinois Department of Corrections ("IDOC"). At all times relevant to this Amended Complaint, Plaintiff was housed at SCC in Joliet, Illinois.

6. Defendant Dr. Partha Ghosh ("Dr. Gosh") is a physician licensed to practice medicine in the State of Illinois. At all times relevant to this Amended Complaint, Dr. Ghosh was the Medical Director of SCC. As Medical Director, Dr. Ghosh is responsible for the provision of adequate medical services to provide for the health and wellbeing of all inmates. Dr. Ghosh is being sued in his individual and official capacities. Dr. Ghosh is being sued in his official capacity for injunctive relief only.

7. Defendant Dr. Liping Zhang ("Dr. Zhang") is a physician licensed to practice medicine in the State of Illinois. At all times relevant to this Amended Complaint, Dr. Zhang was employed as a physician in the HCU at SCC. Dr. Zhang is being sued in her individual and official capacities. Dr. Zhang is being sued in her official capacity for injunctive relief only.

8. At all times relevant to this Amended Complaint, Defendant Marcus Hardy ("Warden Hardy") was and is the warden of SCC, and was responsible for the general care of the inmates and the disposition of all grievances filed by inmates at the facility. Warden Hardy is being sued in his official capacity for injunctive relief only.

9. Upon information and belief, Defendant B. Johnson was an employee of IDOC working at SCC at all times relevant to the Amended Complaint. Upon information and belief, Mr. Johnson's responsibilities included scheduling and arranging for transportation of inmates at SCC for medical furloughs.

10. Upon information and belief, additional unknown IDOC employees, correctional officers, and medical staff whose identities are unknown to Plaintiff (the "Unknown Defendants") are responsible for the failure to timely diagnose and treat Plaintiff's injuries and to properly respond to Plaintiff's medical needs. These Unknown Defendants are sued in their individual capacities.

**Facts**

11. On May 12, 2006, Plaintiff seriously injured his right knee as he was getting out of his bed, a top bunk, and felt a pop in his knee when he landed on the floor. The injury caused Plaintiff a great deal of pain and made it difficult for Plaintiff to walk.

12. Plaintiff could not get in or out of his bed without great pain and difficulty, was unable to participate in work or exercise, and experienced a greatly reduced range of motion in his injured knee.

13. On May 15, 2006, Plaintiff visited the Health Care Unit ("HCU") at SCC, where he was examined by Physician's Assistant L. Williams. Ms. Williams diagnosed Plaintiff with a sprained knee, and ordered an x-ray.

14. Despite Plaintiff's complaint that he was in severe pain, upon information and belief, neither Ms. Williams nor any other medical staff personnel prescribed medication or any other treatment of Plaintiff's injury during the May 15, 2006 visit.

15. Plaintiff continued to experience extreme pain, reduced range of motion, and difficulty walking or standing. As a result of this, Plaintiff made repeated requests to be seen at the HCU.

16. On May 31, 2006, Plaintiff was again seen at the HCU, this time by Dr. Ghosh. At that time, Dr. Ghosh scheduled an x-ray for Plaintiff's knee, and provided Plaintiff with a cloth brace. Plaintiff requested that Dr. Ghosh prescribe pain medication, but none was provided.

17. On October 23, 2006, Plaintiff was again seen by Dr. Ghosh at the HCU. Plaintiff continued to complain of severe pain in his knee. Dr. Ghosh provided Plaintiff with ibuprofen and Tylenol for his pain. After taking the ibuprofen and Tylenol, Plaintiff continued to complain to SCC staff and medical staff that the medication failed to relieve his pain and discomfort.

18. On November 1, 2006, Plaintiff finally received an x-ray on his injured knee. The results of the x-ray were negative. Dr. Ghosh recommended that Plaintiff receive an MRI

in order to determine the nature and extent of his injuries, but did not order or schedule Plaintiff for the MRI.

19. On November 30, 2006, and December 15, 2006, Plaintiff was again seen by Dr. Ghosh at the HCU. On each occasion, Plaintiff complained that the medications provided were not managing the pain in his knee and that he was still experiencing significant pain as a result of his injury. Dr. Ghosh merely instructed Plaintiff to apply ice to his knee and keep it elevated, and gave him more ibuprofen. Despite his own earlier recommendation, Dr. Ghosh still did not schedule Plaintiff for an MRI.

20. From December 15, 2006, to September 11, 2009, Plaintiff was seen in the HCU by both Dr. Ghosh and Dr. Zhang on at least fourteen (14) occasions. Despite Plaintiff's repeated complaints of excruciating pain in his right knee, difficulties walking and standing, and the multiple visits to the HCU for his knee injury during this time, Plaintiff did not receive the MRI necessary to diagnose and treat his injury until September 11, 2009, nor did he ever receive pain medication that adequately managed his pain.

21. During this December 2006 to September 2009 timeframe, the pain in Plaintiff's knee continued to worsen. He experienced difficulty sleeping, and was continuously unable to work or exercise. During this time, Plaintiff's knee would occasionally "lock up" such that he could not move his knee at all. During this entire time, Plaintiff was unable to walk without crutches.

22. To no avail, Plaintiff sought relief through the IDOC grievance process by filing numerous written complaints regarding the inadequacy of the medical care that he received related to the his right knee injury.

23. On July 16, 2009, Plaintiff again visited Dr. Ghosh in the HCU. During this visit, Dr. Ghosh finally scheduled Plaintiff to receive an MRI.

24. Plaintiff finally received an MRI on his knee on September 11, 2009, at the University of Illinois at Chicago Hospital ("UIC Hospital"), nearly three years after Dr. Ghosh determined the MRI would be necessary to diagnose and treat Plaintiff's injuries.

25. The MRI was administered by Doctors Samuel Chmell and Fernando Techy at UIC Hospital.

26. The result of the MRI showed a tear in Plaintiff's lateral meniscus, a moderate sized joint effusion, and a partially ruptured Baker's cyst. There were also several cartilage defects in Plaintiff's knee. In addition, there was "loose body" in Plaintiff's knee, which was likely a piece of cartilage that had become detached from the defect site.

27. On September 15, 2009, Dr. Ghosh received the results of Plaintiff's MRI. These results included the diagnosis of Plaintiff's injury.

28. On November 23, 2009, Plaintiff went to UIC hospital for a follow-up examination. During this visit, Dr. Techy evaluated the MRI Plaintiff had received on September 11, 2009.

29. At the November 23, 2009 visit, Dr. Techy scheduled Plaintiff for surgery on his knee to attempt to repair it. The surgery was scheduled for January 5, 2010, and a preparatory examination was scheduled for thirty (30) days prior to surgery, approximately December 4, 2009.

30. The UIC Hospital medical staff did not inform Plaintiff of either the results of the MRI, his need for surgery, his scheduled surgery date, or his preparatory examination appointment.

31. On November 30, 2009, Dr. Ghosh received the results of Plaintiff's follow-up examination at UIC. These results included Plaintiff's scheduled surgery date for January 5, 2010, and the need for a further examination at UIC before that time in preparation for the surgery.

32. On November 30, 2009, Plaintiff saw Dr. Ghosh in the HCU. During this visit, Dr. Ghosh explained to the Plaintiff the nature of his injuries for the first time. Dr. Ghosh also told Plaintiff that surgery would be required, but did not tell Plaintiff about his scheduled surgery on January 5, 2010, or the need for another visit to UIC Hospital in preparation for the surgery.

33. Upon information and belief, during the November 30, 2009 visit, Dr. Ghosh did not prescribe any additional medication to manage Plaintiff's pain while he awaited surgery. As a result, Plaintiff continued to suffer excruciating pain.

34. Following the November 30, 2009 visit, neither Dr. Ghosh nor anyone else on the SCC staff made arrangements for Plaintiff to receive medical transport to UIC Hospital for his surgical appointment on January 5, 2010. As a result, Plaintiff missed the appointment and did not receive the surgery he required at that time.

35. Shortly after January 5, 2010, Plaintiff discovered that he had missed his appointment for surgery, and filed a grievance complaining of this fact.

36. Plaintiff was again scheduled for surgery on his knee on March 30, 2010. The UIC Doctors spoke with Mr. B. Johnson regarding Plaintiff's transportation needs for that day. Dr. Ghosh arranged medical transport for Plaintiff.

37. On March 30, 2010, Correctional Officer Torrez and another guard transported Plaintiff to UIC for surgery via medical furlough. The transport arrived at UIC at 2:00 p.m., the

time designated by Dr. Ghosh and/or other medical staff personnel. This was the time at which Plaintiff's surgery was scheduled to start.

38. When Plaintiff arrived at UIC for his surgery, Officer Torrez was told by hospital staff that Plaintiff was expected at the hospital no later than 9:00 a.m. that morning in order to prepare for surgery. As a result of the transport being scheduled five hours late by Dr. Ghosh and/or B. Johnson, Plaintiff was unable to receive surgery on March 30, 2009.

39. Plaintiff's surgery was rescheduled for April 27, 2010, when Plaintiff finally received arthroscopic surgery on his knee at UIC Hospital. Dr. Chmell performed the surgery.

40. Dr. Chmell prescribed follow-up care for Plaintiff following his surgery, including physical therapy and a prescription for Vicodin to manage the pain.

41. Plaintiff was released from the hospital on April 28, 2010, and returned to SCC.

42. When he arrived at SCC, Plaintiff was seen by Dr. Ghosh. During this visit, Dr. Ghosh told Plaintiff that he would not receive Vicodin for his pain, but would instead receive Tramadol.

43. Several hours after being released from UIC Hospital, on April 28, 2010, Plaintiff was provided with pain medication for the first time following his surgery by the SCC medical staff. Upon information and belief, the medication that was provided was Tramadol, which did not adequately relieve Plaintiff's pain.

44. The pain in Plaintiff's knee increased in the period immediately following his surgery.

45. Plaintiff was seen by Dr. Ghosh on April 28, May 3, and May 10, 2010, and on each occasion complained that the pain medication he was receiving did not adequately address his pain, and that the pain had increased since the surgery despite the medication he had been

given. Despite these complaints, and at least two grievances concerning the same issue, Plaintiff never received pain medication sufficient to relieve his pain.

46. To this day, Plaintiff continues to experience severe pain in his right knee. As a result of this pain, he is unable to walk without the aid of crutches, is unable to participate in work or exercise at SCC, and experiences disturbances in his sleep and overall enjoyment of life.

47. To this day, and despite numerous requests, the medication provided to Plaintiff to treat his knee injury continues to be inadequate.

48. Plaintiff has not received proper treatment for his injured knee, and continues to experience diminished range of motion, inability to walk without the aid of crutches, and lack of lateral stability in the joint. The treatment provided, including a fabric brace, ibuprofen, naproxen sodium, and physical therapy, has not been effective in relieving these symptoms.

49. As a direct and proximate result of Defendants' actions and omissions, Mr. Norwood's injuries have been exacerbated. The numerous delays in and denials of the provision of adequate medical care has caused Mr. Norwood increased pain and discomfort and, upon information and belief, increased damage to his injured knee.

**COUNT I**
**§ 1983 – Denial of Adequate Medical Care**

**Against Dr. Ghosh, Dr. Zhang, B. Johnson, Unknown Medical Staff, and Unknown Correctional Officers in their Individual Capacities**

50. Mr. Norwood re-alleges Paragraphs 1-49 as if fully restated herein.

51. By the foregoing actions, Drs. Ghosh and Zhang, B. Johnson, and the Unknown Defendants intentionally or recklessly failed to provide Mr. Norwood with adequate medical care for his serious medical condition.

52. As described above, Drs. Ghosh and Zhang, B. Johnson, and/or the Unknown Defendants acted intentionally and/or recklessly in failing to timely perform an MRI to diagnosis and treat Plaintiff's knee injury, failing to inform Plaintiff of, and arrange transport to, Plaintiff's scheduled surgery on January 5, 2010, failing to arrange for Plaintiff's timely transport for the surgery scheduled on March 30, 2010, and for failing to provide Plaintiff with adequate medication to treat the pain and suffering caused by his injuries and the delays in treatment thereof.

53. The acts and/or omissions of Drs. Ghosh and Zhang, B. Johnson, and the Unknown Defendants, under color of state law and without justification, amounted to deliberate indifference to an objectively serious and subjectively known danger posing a substantial risk of serious harm to Mr. Norwood, and amounts to cruel and unusual punishment in violation of 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution.

54. As a result of these violations of his Constitutional rights, Plaintiff has suffered unnecessary and wanton infliction of great pain, mental anguish, and exacerbation of his injuries.

WHEREFORE, Plaintiff, Kelvin Norwood, respectfully requests judgment against Dr. Gosh, Dr. Zhang, B. Johnson, and the Unknown Defendants, jointly and severally, for compensatory damages and punitive damages in an amount to be determined at trial, plus attorney's fees and costs pursuant to 42 U.S.C. § 1988, and for such other relief that this Court deems just, proper and equitable.

## COUNT II
### Intentional Infliction of Emotional Distress (State Law Claim)

**Against Dr. Ghosh, Dr. Zhang, B. Johnson, Unknown Medical Staff, and Unknown Correctional Officers in their Individual Capacities**

55. Mr. Norwood re-alleges paragraphs 1-54 as if fully restated herein.

56. The acts and/or omissions of the Drs. Ghosh and Zhang, B. Johnson, and the Unknown Defendants as set forth above were extreme and outrageous.

57. Drs. Ghosh and Zhang, B. Johnson, and the Unknown Defendants intended to cause or acted with knowledge of the high probability that the conduct would cause Mr. Norwood emotional distress.

58. The actions and conduct of Drs. Ghosh and Zhang, B. Johnson, and the Unknown Defendants did directly and proximately cause severe emotional distress to Mr. Norwood, resulting in injury to his mind, body, and nervous system, including loss of sleep, mental anguish, and severe pain and emotional suffering.

WHEREFORE, Plaintiff, Kelvin Norwood, respectively requests judgment against all Drs. Ghosh and Zhang, B. Johnson, and the Unknown Defendants, jointly and severally, for compensatory and punitive damages in an amount to be determined at trial, plus attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other relief that this Court deems just, proper, and equitable.

## COUNT III
### Against Marcus Hardy, Dr. Ghosh, and Dr. Zhang in their Official Capacities Only

**Injunctive Relief**

59. Mr. Norwood re-alleges paragraphs 1-58 as if fully restated herein.

60. Mr. Norwood has no adequate remedy to redress his deprivation of medical care, and he will continue to suffer irreparable injury from the alleged acts or omissions unless he is granted the equitable relief he requests.

WHEREFORE, Plaintiff, Kelvin Norwood, respectfully requests that the Court, after a hearing, issue a preliminary and permanent injunction

    A.    Requiring these Defendants to deliver to Plaintiff such medical care and treatment as is necessary to treat Plaintiff's severe injuries and properly manage his pain;

    B.    Enjoining these Defendants from providing medical care that is inconsistent with the standards of medical care in the State of Illinois as a whole;

    C.    Enjoining these Defendants from refusing to provide and/or delaying the provision of necessary medical care to Plaintiff either at SCC or elsewhere;

    D.    Enjoining the Defendants from failing to supervise and instruct employees and agents in such a manner as to assure the delivery to Plaintiff of medical care that is consistent with the standards of medical care in the State of Illinois as a whole.

### Jury Demand

Plaintiff demands a jury trial on all issues so triable.

Dated: July 11, 2011                      Respectfully submitted,

                                            KELVIN NORWOOD (#N-90286)

                                            By:

                                             /s/ Rodney Perry
                                                   One of His Attorneys

Rodney Perry
BRYAN CAVE LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
Tel.: 312-602-5000
Fax: 312-602-5050
rrperry@bryancave.com

162923.6               13