IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KELVIN NORWOOD (N-90286), ) | | |
| ) | | |
| Plaintiff, ) | No. 11 cv 00988 | |
| ) | | |
| v. ) | Judge Norgle. | |
| ) | Magistrate Judge Keys | |
| DR. IMHOTEP CARTER, *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Pursuant to E.D. Mo. L.R. 56.1(b)(3)(a), Plaintiff Kelvin Norwood ("Plaintiff"), by and through his undersigned counsel, provides the following additional facts that require denial of defendants' motions for summary judgment:[1]

---

[1] The record foundation for all facts in this Statement of Additional Facts is provided in the Plaintiff's Summary Judgment Appendix as follows:

| *Description* | *Exhibit* |
|---|---|
| Excerpts from Deposition of Kelvin Norwood dated June 12, 2013 ("Norwood Dep.") | A |
| Declaration of Kelvin Norwood ("Norwood Decl.") | B |
| Excerpts from Deposition of Dr. Parthasarathi Ghosh dated April 2, 2013 ("Ghosh Dep. I") | C |
| Excerpts from Deposition of Dr. Parthasarathi Ghosh dated May 30, 2013 ("Ghosh Dep. II") | D |
| Excerpts from Deposition of LaTanya Williams dated May 31, 2013 ("Williams Dep.") | E |
| Excerpts from Deposition of Olayinka Olarewaju dated October 18, 2013 ("Olarewaju Dep.") | F |
| Excerpts from Deposition of Vicki Dunlap dated February 6, 2014 ("Dunlap Dep.") | G |
| Excerpts from Plaintiff's SCC Medical Records [Ghosh Dep. Ex. 1] ("SCC Medical – Plaintiff 00__.") **Filed Under Seal** | H |
| Excerpts from Deposition of Tammy Garcia dated November 6, 2013 ("Garcia Dep.") | I |
| Excerpts from Deposition of Peggy Franklin dated November 6, 2013 ("Franklin Dep.") | J |
| Excerpts from Deposition of Patti Torri dated February 6, 2014 ("Torri Dep.") | K |
| Excerpts from Deposition of Dr. Samuel J. Chmell dated January 11, 2013 ("Chmell Dep.") | L |

1. On or about May 12, 2006, Plaintiff injured his right knee getting down from the top bunk in his cell. *See* Norwood Dep. at 22:14-21, 24:1-5, 24:16-23, 95:12-22; Norwood Decl. ¶ 3.

2. The injury caused Plaintiff a great deal of pain and made it difficult for him to walk, get in or out of his bed, participate in work or exercise or move his right knee. Norwood Decl. ¶ 4.

3. Dr. Parthasarathi Ghosh was formerly employed as the medical director at Stateville Correctional Center ("SCC") from June 2003 to March 31, 2011. Ghosh Dep. I at 6:15 – 7:7, 12:16 – 13:6, 19:3-23. Dr. Ghosh is not an orthopedic surgeon or specialist. Ghosh I Dep. at 7:5 – 11:2.

4. Dr. Saleh Obaisi is the current medical director at SCC. Norwood Dep. 71:3-5.

5. When Dr. Ghosh saw patients at SCC, it was his custom to review the medical records for the inmate, including notes made by other medical staff. Ghosh Dep. I at 50:11 – 52:22.

| Exhibits from Deposition of Dr. Samuel J. Chmell ("Chmell Dep. Ex. __") **Filed Under Seal** | M |
| --- | --- |
| Excerpts from Plaintiff's UIC Medical Records ("UIC 00__") **Filed Under Seal** | N |
| Robert Kiningham, M.D., Jeffrey Desmond, M.D., David Fox, M.D., Hilary Haftel, M.D., Mark McQuillan, M.D. & Edward Wojtys, M.D., *Knee Pain or Swelling: Acute or Chronic*, University of Michigan Health System Guidelines for Clinical Care (Apr. 2005) | O |
| *See* Aruna Seneviratne, M.D., *Osteochondral Defects (OCD) or Articular Cartilage Defects*, NYC Sports Med, http://www.nycsportsmed.com/osteochondral-defects.html, last accessed January 5, 2015. | P |
| *See* Cecilia Pascual-Garrido, MD, Allison G. McNickle, MS, and Brian J. Cole, MD, *Surgical Treatment Options for Osteochondritis Dissecans of the Knee*, Sports Health (Jul. 2009) | Q |
| *See* Bradley S. Baker, M.D., *Meniscus Injuries Treatment & Management* (May 2, 2014), http://emedicine.medscape.com/article/90661-treatment | R |

6. On May 15, 2006, Plaintiff visited the Health Care Unit ("HCU") at SCC for the injury to his right knee. During that visit, Plaintiff reported and was assessed for an injury to his right knee. Norwood Dep. at 24:1-5, 24:16-23, 25:22 – 27:14; Norwood Decl. ¶ 5.

7. An unidentified medical technician or "CMT" saw Plaintiff on May 15, 2006. SCC Medical Records – Plaintiff 00022; Ghosh Dep. I 53:17 – 54:2, 55:16 – 57:5. During the May 15, 2006 visit to the HCU, the CMT assessed Plaintiff as having a sprained knee. Norwood Dep. at 24:1-5, 24:16-23, 25:22 – 27:14; SCC Medical Records – Plaintiff 00022.

8. As a result of the May 15, 2006 visit, Plaintiff was referred to a physician for further treatment. Ghosh Dep. I 60:7 – 61:24; SCC Medical Records – Plaintiff 00022.

9. Dr. Ghosh is unable to determine one way or the other if Plaintiff's medical records reflect that, during the May 15, 2006 visit, Plaintiff was seen for an injury to his right knee or left knee. Ghosh Dep. I at 58:19 – 59:21.

10. Following the May 15, 2006 visit, Plaintiff continued to experience extreme pain in his right knee, reduced range of motion in his right knee, and difficulty walking or standing. Norwood Decl. ¶¶ 6-7.

11. As a result of this, Plaintiff made repeated complaints about pain in his right knee and made requests to be seen at the HCU for the injury to his right knee. Norwood Decl. ¶ 6.

12. Between May 31, 2006 and July 1, 2009, Plaintiff complained to SCC medical staff, and visited the HCU on numerous occasions related to pain in both knees. During those visits, Plaintiff was attended to by Dr. Ghosh, Dr. Andrew Tilden, Dr. LiPing Zhang, and physician assistant, LaTanya Williams. *See* Norwood Dep. at 31:3-6, 31:13-32:2, 35:9-22; 95:23-97:18; Norwood Decl. ¶¶ 7-10, 12-13; Williams Dep. at 32:21-34:11, 43:14-48:10, 52:20-54:3, 61:13-67:1; Ghosh Dep. I at 63:7-66:6, 85:3-88:1, 93:13-95:11, 97:12-99:15, 128:7-133:23,

140:3-142:8, 161:9-162:11, 165:4-167:18, 178:14-180:9; SCC Medical Records – Plaintiff 00022-25, 00028-29, 00033-35, 00040.

13. At times, however, the medical staff would limit Plaintiff to addressing only one or two medical problems during his visits to the HCU and the medically staff typically did not complete the progress notes related to Plaintiff's visit in his presence or during the visit. Norwood Dep. at 36:7 – 37:1; Norwood Decl. ¶ 8.

14. SCC medical records that indicate that Plaintiff only reported left knee pain prior to July 2009 are inaccurate or incomplete. Plaintiff reported pain in both knees, but primarily in his right knee following the fall from his bunk in May 2006. Norwood Decl. ¶¶ 8-9, 12-13; Norwood Dep. at 31:3-6, 31:13-32:2, 35:9-22; 95:23-97:18.

15. On or about September 26, 2007, Plaintiff visited the HCU, where he was attended to by LaTanya Williams, and again complained of pain and swelling in both knees. Plaintiff also complained that his knee supports were taken by "orange crush" (SCC's special tactical team) a few months prior. Williams Dep., 43:14-48:10; SCC Medical Records – Plaintiff 00033-34.

16. Following Ms. Williams' September 26, 2007 examination of Plaintiff, Ms. Williams reordered elastic knee supports for both Plaintiff's knees, and referred Plaintiff to the medical director for an examination of his right knee. Williams Dep., 49:9-19; SCC Medical Records – Plaintiff 00033.

17. Dr. Ghosh testified that Plaintiff should have seen a medical doctor, rather than just a physician's assistant, regarding his knee pain by October 27, 2007, but he had not. Ghosh Dep. I, 135:12-137:6, 153:22-154:4.

18. If a patient has recurring pain and swelling in his knee, the recommended course of treatment is to do an arthroscopy on the knee. Chmell Dep. 15:6-18.

19. Between May 2006 and the end of 2009, the medical staff prescribed knee bandages, crutches, knee braces and pain medication, mostly Motrin, to Plaintiff for his ongoing pain in both knees. Norwood Dep. at 28:6-11, 28:21 -29:15, 31:15 – 33:3, 33:15 – 34:2, 35:5-15, 40:2-5, 50:14-22; Williams Dep., 75:4-77:1 SCC Medical Records – Plaintiff 00042, 00252, 00254-55, 00257-63, 00289.

20. After examining Plaintiff on or about November 1, 2006, Ms. Williams recommended, among other things, that Plaintiff receive an elastic knee support. The medical technician was responsible for getting the request for the knee support to SCC's central supply department. Williams Dep., 32:21-34:11, 40:17-42:1.

21. On or about September 26, 2007, Plaintiff complained to Ms. Williams that his knee supports were taken by "orange crush" (SCC's special tactical team) a few months prior. Williams Dep., 43:14-48:10; SCC Medical Records – Plaintiff 00033-34.

22. The prescription order dated September 26, 2007 does not contain a prescription for any knee braces or supports. Williams Dep., 59:1-9; SCC Medical Records – Plaintiff 00253.

23. On or about October 22, 2007, Plaintiff spoke with Ms. Williams and complained that he still had not received his knee supports. Ms. Williams did not follow up directly with SCC's central supply department, but wrote another prescription for knee supports for both knees. Williams Dep., 52:20-56:13; SCC Medical Records – Plaintiff 00035, 00254.

24. On or about December 12, 2007, Ms. Williams made a note in Plaintiff's medical records to check on the knee supports with central supply. At that time, she also prescribed

Plaintiff a refill of Motrin for pain. Williams Dep., 61:13-63:9; SCC Medical Records – Plaintiff 00029, 00255.

25. On or about December 19, 2007, nearly three months after Ms. Williams initially recommended reordering the knee supports, Plaintiff complained that he still had not received his knee supports. Ms. Williams noted in the medical records that Plaintiff "states he still hasn't gotten braces or support, nor Motrin; it has been ordered several times." Ms. Williams made another note in Plaintiff's medical records to check on the status of the knee supports. Williams Dep., 65:7-67:3; SCC Medical Records – Plaintiff 00029.

26. The medication, medical devices and other treatment prescribed by the SCC medical staff never alleviated or significantly improved the pain in Plaintiff's right knee, and he repeatedly complained to the medical staff, including Dr. Ghosh and Ms. Williams, during the 2006 to 2009 timeframe that his knee pain had not improved. Norwood Dep. at 30:11 – 31:2, 33:9 – 34:6, 35:5-22, 42:2-11.

27. On or about July 9, 2009, Plaintiff visited the HCU and again complained of pain and swelling in his right knee. *See* Norwood Dep. at 44:19 – 45:2, 46:5 – 47:7; Williams Dep., 72:18-80:23; Ghosh Dep. I, 182:8-185:4, 194:3-7; SCC Medical Records – Plaintiff 00042, 00047, 00288. The outpatient notes dated July 9, 2009 indicated a possible torn ACL or MCL, and recommended that Plaintiff be referred to the medical director, Dr. Ghosh, for an evaluation as soon as possible. *See* Williams Dep., 75:21-80:23; Ghosh Dep. I, 182:8-185:4; Plaintiff 00042, 00047, 00288.

28. Dr. Ghosh examined Plaintiff on July 16, 2009, although Dr. Ghosh's progress notes for that examination were not contained in SCC's medical records. Williams Dep., 76:1-79:13; Ghosh Dep. I, 188:7-190:3; SCC Medical Records – Plaintiff 00042, 00116.

29. On or about July 16, 2009, more than three years after Plaintiff first sustained the injury to his right knee and repeatedly complained of pain in both knees, Dr. Ghosh requested that Plaintiff receive an MRI of his right knee for "recurrent pain," swelling, instability and decreased or painful range of motion. *See* Ghosh Dep. I, 188:9-23, 201:11-202:11; SCC Medical Records – Plaintiff 00115-116.

30. Generally, if the SCC medical director feels a patient needs a special test or off-site appointment, he will write up the appropriate consultation or referral request and deliver it to SCC's medical records director. *See* Ghosh Dep. I, 35:9-36:18; Olarewaju Dep., 14:6-17:9, 28:8-24. The consultation or referral request would be noted in the referral portions of a Medical Special Services Referral and Report. Ghosh Dep. II, 267:3-11; *see also e.g.*, SCC Medical Records – Plaintiff 00115, 00118.

31. Since December 2009, the medical records director at SCC has been Olayinka Olarewaju ("Olarewaju"). *See* Olarewaju Dep., 13:12-14:8. During the time Dr. Ghosh was employed at SCC, he was responsible for delivering any request for an MRI or other off-site consult to Olarewaju so that off-site visit could be scheduled. *See* Ghosh I Dep. at 207:24-210:6.

32. The medical records department at SCC is responsible for sending the medical director's consult to Wexford's headquarters, and the medical director will discuss the consult with Wexford's utilization management. *See* Ghosh I Dep. at 35:19-36:5; Olarewaju Dep. at 15, 28:8-29:13. Wexford's utilization management department is responsible for approving any off-site consults. *See* Ghosh Dep. at 35:19-36:5; Olarewaju Dep. at 29:7-13.

33. Once Wexford's utilization management has approved the medical director's request, Wexford utilization management contacts University of Illinois Hospital in Chicago

("UIC") or other appropriate outside facility to schedule the appointment. *See* Ghosh I Dep. at 36:2-37:13; Olarewaju Dep. 29:7-22.

34. UIC schedules the appointment and alerts the medical records department at SCC of the appointment date and time. *See* Ghosh I Dep. at 39:23-42:16, 44:6-20; Olarewaju Dep. at 29:7-22. The day prior to the scheduled appointment, Olarewaju notifies the records office via e-mail of the upcoming appointment. *See* Olarewaju Dep. at 16:5-12, 21:16:22-8; 26:11-27:7, 29:24-30:16; Dunlap Dep. at 11:1-13:1.

35. The records office compiles a writ list which is sent to the warden's office, which is responsible for arranging transport to ensure the inmate gets to the appointment. *See* Garcia Dep. at 19:5-20:14; Franklin Dep. at 20:22-30:2; Ghosh Dep. I at 44:21-45:5; Olarewaju Dep. at 21:22-22:20; Dunlap Dep. at 11:18-12:11; Torri Dep. at 21:20-22:22, 26:18-28:21.

36. Where an outside provider such as UIC requests a follow up or pre-operation appointment, it is the medial director's responsibility to prepare a consult request form so that the appointment can be approved by Wexford and scheduled with the outside provider. *See* Olarewaju Dep. at 82:7-83:19.

37. Plaintiff received an MRI on his right knee at UIC on or about September 11, 2009, approximately two months after Dr. Ghosh requested the MRI. *See* Ghosh Dep. I, 204:5-6; SCC Medical Records – Plaintiff 00116.

38. During the 2006 to September 2010 timeframe, the pain in Plaintiff right knee became progressively worse. He experienced difficulty sleeping, was continuously unable to work or exercise, his right knee occasionally "locked up" or "gave out," and he was unable to walk at times without a crutch. Norwood Decl. ¶¶ 4, 6, 11-12; Norwood Dep. at 40:2:5, 41:2 – 42:11, 45:5-19.

39. Dr. Ghosh reviewed the MRI report on or about September 16, 2009, and opined that the MRI revealed a lateral meniscal tear and full thickness cartilage defect on the medial compartment. *See* Ghosh Dep. I, 217:3-220:22; SCC Medical Records – Plaintiff 00044.

40. Surgical treatment of symptomatic meniscal tears is recommended because untreated meniscal tears may increase in size and abrade articular cartilage, resulting in arthritis. *See* Bradley S. Baker, M.D., *Meniscus Injuries Treatment & Management* (May 2, 2014), http://emedicine.medscape.com/article/90661-treatment, attached hereto as **Exhibit R**.

41. After reviewing Plaintiff's MRI report, Dr. Ghosh referred Plaintiff to UIC orthopedics due to a perceived meniscal tear, chronic swelling, pain and instability in Plaintiff's right knee. *See* Ghosh Dep. I, 217:19-23; SCC Medical Records – Plaintiff 00044, 00117, 00118.

42. Dr. Samuel J. Chmell, an orthopedic surgeon from UIC, examined Plaintiff's right knee for the first time on or about November 23, 2009. Chmell Dep., 7:7 – 8:9, 10:8-18, 17:18-21.

43. Before examining Plaintiff's knee, Dr. Chmell reviewed the MRI results, which he opined reflected, among other things, a lateral meniscal body tear, full thickness cartilage defect of the medial compartment, mild patella femoral cartilage pathology, possible focal synovitis, moderate-sized joint effusion, a partially ruptured Baker's cyst, edema (swelling) on both sides of the medial collateral ligament. Chmell Dep. at 13:22 – 17:17; Chmell Dep. Ex. 3.

44. During Dr. Chmell's examination of Plaintiff on November 23, 2009, he noted that Plaintiff had a history of right knee pain for the past year and half after he fell of his bunk. The conditions in the MRI report were consistent with a fall on the knee as Plaintiff had reported to Dr. Chmell. Chmell Dep. 19:18 – 20:6, 20:23 – 21:16; Chmell Dep. Ex. 5.

45. The conditions reflected in the MRI are the types of conditions that could worsen over time if not timely and properly treated. Chmell Dep. at 15:18-21.

46. Dr. Chmell recommended an arthroscopy for Plaintiff's right knee to remove loose body and complete a chrondoplasty. He recommended Plaintiff return the last week of December 2009 for pre-operation testing. *See* Chmell Dep. at 17:18-20:9, 21:23 – 22:14; Chmell Dep. Exs. 4 and 5; Plaintiff 00117-118. He also scheduled Plaintiff for the surgery on January 5, 2010. Chmell Dep. 22:15-23; Chmell Dep. Ex. 5.

47. Dr. Ghosh did make a referral or consultation request for an off-site visit for Plaintiff to return to UIC for either the December 2009 post-operative testing recommended by Dr. Chmell or the January 5, 2010 surgery date noted in Dr. Chmell's progress notes. Ghosh Dep. II at 265:3 – 267:11; 394:9-14. Plaintiff did not receive the surgery on January 5, 2010. Chmell Dep. 22:18 – 23:2.

48. Plaintiff's was referred by Dr. Ghosh to go to UIC for the surgery to take place on March 30, 2010 – over four months after Dr. Chmell first recommended surgery on Plaintiff's right knee. *See* Chmell Dep. at 23:14-23; SCC Medical Records – Plaintiff 00119.

49. A pre-operation appointment to conduct pre-anesthetic testing was recommended by Dr. Chmell at UIC for one month prior to the surgery, but SCC medical staff did not refer Plaintiff to UIC for the pre-anesthetic testing appointment before the March 30, 2010 scheduled surgery. *See* Dr. Chmell Depo, 23:3-23; Ghosh Dep. II at 286:22 – 291:16.

50. Plaintiff did not arrive at UIC in time for pre-operation testing and surgery on March 30, 2010, and therefore the surgery did not take place on that date as planned. *See* Dr. Chmell Depo, 19-23; Chmell Dep. Ex. 6; SCC Medical Records – Plaintiff 00119, 00123-124; Ghosh Dep. II, 286:22 – 292:12. As a result, Plaintiff had to endure excruciating pain

because he had not taken any pain medication since several days before March 30, 2010, in anticipation of the surgery and as instructed by Dr. Ghosh and the SCC medical staff. Norwood Decl. ¶ 18; Ghosh Dep. II at 281:5 – 283:3.

51. Plaintiff filed grievances and complained to the SCC medical staff regarding the pattern of delays and inadequate medical attention that he was experiencing. Norwood Decl. ¶¶ 12, 14, 23.

52. Plaintiff received surgery on his right knee on April 27, 2010. *See* Dr. Chmell Depo, 25:5-21, 26:3-17; Chmell Dep. Ex. 7; SCC Medical Records – Plaintiff 00119, 00123-124.

53. Between the time that Dr. Ghosh reviewed the results of Plaintiff's MRI on September 16, 2009, and Plaintiff's surgery on April 27, 2010, Dr. Ghosh did not make any changes to Plaintiff's pain medication (Motrin) or treatment plan. Ghosh Dep. II at 268:19 – 270:2, 277:21 – 278:16.

54. Tramadol and Tylenol 3 are stronger pain medications than the Motrin that Plaintiff had been receiving. These medications were available to SCC medical staff for prescription to inmates at SCC. Ghosh Dep. II at 311:3 – 313:12, 323:18 – 327:3. A prescription for Tramadol is appropriate to relieve pain in situations where Motrin is not effective. Ghosh Dep. II at 327:19 – 328:11. Vicodin was also available for SCC medical staff to prescribe to inmates. Ghosh Dep. II at 312:13- 313:2.

55. It is generally accepted that symptoms of knee pain and swelling should not be allowed to persist for more than 12 weeks before reevaluation of the condition, along with possible consultation with a musculoskeletal specialist such as an orthopedic surgeon. *See* Robert Kiningham, M.D., Jeffrey Desmond, M.D., David Fox, M.D., Hilary Haftel, M.D., Mark McQuillan, M.D. & Edward Wojtys, M.D., *Knee Pain or Swelling: Acute or Chronic*, University

of Michigan Health System Guidelines for Clinical Care (Apr. 2005), attached hereto as **Exhibit O**.

56. During the April 2010 surgery, Dr. Chmell found a "medial femoral condyle osteochondral defect," and "extensive synovitis throughout the joint." *See* Chmell Dep. at 29:5-33:2; Chmell Dep. Ex. 8. Delay in treating or inadequate treatment of these conditions may have caused them to worsen over time. Chmell Dep. at 30:20-22.

57. A traumatic secondary osteochondral defect injury is usually treated operatively as soon as diagnosis is made. *See* Aruna Seneviratne, M.D., *Osteochondral Defects (OCD) or Articular Cartilage Defects*, NYC Sports Med, http://www.nycsportsmed.com/osteochondral-defects.html, last accessed January 5, 2015, attached hereto as **Exhibit P**.

58. "[Osteochondritis] of the knee requires a timely diagnosis to prevent compromise of the articular cartilage and to maximize the opportunity to perform a restorative procedure. . . . Successful restorative options should relieve pain, restore function, and prevent the development of secondary osteoarthritis." *See* Cecilia Pascual-Garrido, MD, Allison G. McNickle, MS, and Brian J. Cole, MD, *Surgical Treatment Options for Osteochondritis Dissecans of the Knee*, Sports Health (Jul. 2009), attached hereto as **Exhibit Q**; *see also* UIC 158.

59. After surgery, Dr. Chmell prescribed Plaintiff Vicodin for pain relief. *See* Dr. Chmell Dep. at 27:9-11. After an arthroscopy, most patients warrant a level of medication provided by Vicodin. Chmell Dep. at 37:12-22.

60. Plaintiff did not receive Vicodin. *See* Chmell Dep. at 37:2-11; Norwood Dep. at 65:11-22. While in the infirmary, Plaintiff was prescribed Tylenol-3; upon his release from the HCU, Plaintiff was prescribed Motrin for his post-surgical pain. *See* Ghosh Dep. II, 309:7-310:6,

314:3-317:9; SCC Medical Records – Plaintiff 00054-55, 00265. Plaintiff did not receive the prescribed Motrin until four days after he was discharged from HCU. Norwood Decl. ¶ 20.

61. On May 4, 2010, Plaintiff had a post-operative appointment with Dr. Chmell at the UIC orthopedic clinic. At that time, Dr. Chmell recommended Plaintiff take Tramadol for pain, as needed, and utilize crutches and physical therapy. Dr. Chmell also recommended Plaintiff follow up with the UIC orthopedic clinic in six months, in approximately November 2010. Chmell Dep. at 34:21-35:12; Chmell Ex. 9; SCC Medical Records – Plaintiff 00125-127.

62. Dr. Ghosh did not refer Plaintiff for a follow up appointment with the UIC orthopedic clinic within six months of Plaintiff's May 4, 2010 visit with Dr. Chmell. Dr. Chmell did not see Plaintiff again for nearly two years, on March 19, 2012. Chmell Dep. at 38:16-21; Chmell Dep. Ex. 10.

63. At Plaintiff's stage of post-operative care in May 2010, six months (or sooner if Plaintiff was experiencing continued pain in or trouble with his knee) for a follow-up visit with the orthopedic clinic would have been the typical standard of care. Chmell Dep. 40:7-19.

64. The surgery Plaintiff received in April 2010 stopped Plaintiff's right knee from "giving out" and decreased the pain somewhat, but it did not completely eliminate the issues he experienced with his right knee. Norwood Dep. at 71:6 -76:5; Chmell Dep. 39:5-10.

65. Plaintiff continued to complain to HCU staff about pain in his right knee, which was not controlled by pain medication, therapy or braces provided to Plaintiff. *See* Norwood Decl. ¶¶ 14, 23-24; SCC Medical Records – Plaintiff 00319, 00325. Twice in July 2010 Plaintiff visited the HCU complaining of pain and swelling in his right knee. Williams Dep., 98:11-101:22; Ghosh Dep. II, 336:11-346:18; SCC Medical Records – Plaintiff 00060, 00062.

66. After Plaintiff's April surgery, Plaintiff did not receive physical therapy until August 2010. *See* Norwood Decl. 22; SCC Medical Records – Plaintiff 00063-65.

67. On or about August 23, 2010 and February 4, 2011, Plaintiff visited the HCU and complained of knee pain to Ms. Williams and Dr. Ghosh, respectively. Williams Dep., 110:17-113:24; Ghosh Dep. II, 346:20-347:13, 349:14-351:12, 362:5-364:24; SCC Medical Records – Plaintiff 00065, 00083.

68. Following the February 4, 2011 visit, Dr. Ghosh increased Plaintiff's prescription for Motrin for the first time in years. Ghosh Dep. II, 353:16-355:17, 363:20-364:12; SCC Medical Records – Plaintiff 00262-67, 00269.

69. On or about July 11, and December 29, 2011, Plaintiff visited the HCU and complained of knee pain. SCC Medical Records – Plaintiff 00106, 00310-11.

70. On or about January 5, 2012, Dr. Carter, Dr. Ghosh's immediate successor as medical director, finally referred Plaintiff to UIC for another orthopedic evaluation. *See* SCC Medical Records – Plaintiff 00414.

71. Dr. Chmell examined Plaintiff on March 19, 2012, and recommended x-rays of Plaintiff's right knee, along with physical therapy to try to maximize Plaintiff's range of motion. Dr. Chmell recommended Plaintiff follow up with UIC orthopedic clinic in one to two months. *See* Chmell Dep. at 38:16-40:22; Chmell Dep. Ex. 10; SCC Medical Records – Plaintiff 00312-315.

72. Plaintiff received an x-ray on his right knee at SCC. On or about March 28, 2012, Dr. Carter noted that the x-ray revealed slight to moderate degenerative joint disease. *See* SCC Medical Records – Plaintiff 00393.

73. Despite Dr. Chmell's recommendation that Plaintiff return to the UIC orthopedic clinic within one to two months of the March 19, 2012 visit, the SCC medical staff did not refer Plaintiff to UIC until September 27, 2012. *See* SCC Medical Records – Plaintiff 00332.

74. Dr. Chmell did not see Plaintiff again until November 12, 2012. Chmell Dep. 41:1-21; Chmell Dep. Ex. 11. On November 12, 2012, Dr. Chmell diagnosed Plaintiff with osteoarthritis of the right knee with subchondral sclerosis and osteophytic formation. At that time, Dr. Chmell gave Plaintiff a cortisone injection in the knee and recommended physical therapy. *See* Chmell Dep. at 41:13-44:11; Chmell Dep. Ex. 11; SCC Medical Records – Plaintiff 00332.

75. Plaintiff's osteoarthritis may have been caused by the delayed or inadequate treatment of his right knee injury. Chmell Dep. at 44:9-11; 52:20 – 53:1.

76. Plaintiff's April 27, 2010 surgery did not completely repair Plaintiff's right knee condition. Based on Plaintiff's post-surgery follow-up appointments with Dr. Chmell, Dr. Chmell considered that Plaintiff may need a total knee replacement. Chmell Dep. 39:5-24.

77. Dr. Obaisi delayed implementing Plaintiff's physical therapy prescribed by Dr. Chmell, and then prematurely discontinued Plaintiff's physical therapy order, which prompted Plaintiff to file a grievance on or about June 22, 2014. Norwood Decl. ¶ 24.

78. Plaintiff eventually required a full right knee replacement, or "total knee arthroplasty," which he received on September 23, 2014. Chmell Dep. at 39:5-24; Norwood Decl. ¶ 25; UIC 008-13. Following knee replacement surgery, proper physical therapy is critical for a patient's effective recovery, and is just as important as the operation. Chmell Dep. 39:20 – 40:5.

79. Dr. Chmell has never been able to get adequate physical therapy for an inmate at SCC. As a result, it is extremely difficult to accomplish a satisfactory knee replacement surgery on an inmate at SCC. Chmell Dep. at 39:23 – 40:6.

80. Since Plaintiff's knee replacement surgery, he has continued to experience swelling, instability and severe pain in his right knee. He still has to use a crutch to walk. Norwood Decl. ¶ 25. Since the knee replacement surgery, Plaintiff has been seen in the HCU a number of times in which he has repeatedly complained about the ongoing problems with his right knee. Norwood Decl. ¶ 25.

81. Since the knee replacement surgery, the SCC medical staff's pattern of delays and inadequate medical care in addressing issues related to Plaintiff's knee has continued. He has experienced, and continues to experience and complain about, inadequate medical care such as unexplained and lengthy delays getting pain mediation, decreases in the dosage and/or regularity of my pain medication which causes his knee pain to worsen, prescriptions for medication that does not effectively control the pain, and having his crutch taken away by the medical staff. Plaintiff's knee pain also prevents me from sleeping or causes me to wake up in severe pain at times. Norwood Decl. ¶ 26.

82. On November 17, 2014, Dr. Chmell recommended that Plaintiff receive regular physical therapy and that he return to the UIC orthopedics clinic for post-operative following up in six months. Norwood Decl. ¶ 27; Chmell Dep. at 39:5-24.

83. In or around November 2014, the SCC medical staff reduced the frequency of Plaintiff's physical therapy sessions. The exercise bike that Plaintiff uses for physical therapy is in need of repair. It jerks Plaintiff's leg and causes sharp pain in his right knee. Norwood Decl. ¶¶ 28-29.

84. The stress of having to deal with the inadequate medical care, constant delays and severe pain related to his knee condition has caused Plaintiff sever emotional pain and suffering. Norwood Dep. 82:10-13, 87:3 89:9. He has had to see a mental healthcare provider at SCC at least four times since my knee replacement surgery. Norwood Decl. ¶ 30.

Dated: January 9, 2015  Respectfully submitted,

By: /s/ Rodney Perry
Rodney Perry, # 6275686
Amy E. Breihan, # 6303879
BRYAN CAVE LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
Tel.: 312-602-5000
Fax: 312-602-5050

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record on January 9, 2015, through the Court's electronic filing system.

/s/ Rodney Perry
Rodney Perry

4446672.5